IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEANNA SMITH, et al., | : | Case No.: 2:15-cv-03030 |
| | : | |
| Plaintiffs, | : | Judge Smith |
| | : | |
| v. | : | Magistrate Judge Deavers |
| | : | |
| THE OHIO STATE UNIVERSITY, | : | |
| | : | |
| Defendant. | : | |

## **DEFENDANT THE OHIO STATE UNIVERSITY'S**
## **MOTION TO DISMISS**

Now comes Defendant The Ohio State University, by and through the undersigned counsel, and moves the Court pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' Complaint in its entirety because Plaintiffs' claims under the Fair Credit Reporting Act are barred by sovereign immunity and because Plaintiffs lack Article III standing to bring their claims. Because of these jurisdictional bars, and particularly Ohio State's sovereign immunity defense, this Court should stay discovery in this action pending resolution of this Motion. Alternatively, if the Court deems the standing question determinative of whether the case may proceed, this Court should stay this action pending resolution of *Robins v. Spokeo*, a case now before the United States Supreme Court that raises the same issues of standing under the Fair Credit Reporting Act that are presented here. The grounds for Defendant's Motion are more fully set forth in the accompanying Memorandum in Support.

Respectfully submitted,

MICHAEL DEWINE (0009181)
Ohio Attorney General

*/s/ Robert N. Webner*
Robert N. Webner (0029984) (Trial Attorney)
Martha Brewer Motley (0083788)
VORYS, SATER, SEYMOUR and PEASE LLP
52 E. Gay Street, P.O. Box 1008

Columbus, Ohio 43216-1008
T:  (614) 464-5626 / F: (614) 719-5080
rnwebner@vorys.com
mbmotley@vorys.com

*Special Counsel for Defendant*
*The Ohio State University*

Of Counsel:

Lee Ann Rabe (0077170)
Randall W. Knutti (0022388)
Principal Assistant Attorneys General
Court of Claims Defense Section
150 East Gay Street, Floor 18
Columbus, Ohio 43215
T: (614)466-7447 / F: (614)644-9185
LeeAnn.Rabe@OhioAttorneyGeneral.gov
Randall.Knutti@OhioAttorneyGeneral.gov

<u>**MEMORANDUM IN SUPPORT**</u>

**I.      Preliminary Statement**

Plaintiffs Deanna Smith and Harmoni Sauder allege that The Ohio State University ("Ohio State") violated one provision of the Fair Credit Reporting Act, 15 U.S.C. § 1681b ("FCRA"), during the process of hiring Plaintiffs several years ago.  Plaintiffs allege that Ohio State failed to provide a "stand-alone" disclosure of their rights before obtaining Plaintiffs' credit reports and, ultimately, hiring Plaintiffs.  Plaintiffs assert that they are entitled to statutory remedies of $100-$1,000 per violation and seek to certify a class of "all employees or prospective employees of [Ohio State] in the United States, with respect to whom Defendant procured or caused a consumer report to be procured, during the period five years prior to the filing of the Complaint in this action through the date of certification" to pursue such claims on a class-wide basis.

Plaintiffs' FCRA claims must be dismissed for two threshold reasons.  First, sovereign immunity bars any FCRA claim against Ohio State because Congress lacked the authority to abrogate state sovereign immunity when it enacted the FCRA pursuant to the Commerce Clause, and because Congress in any event did not make an intention to abrogate sovereign immunity "unmistakably clear in the language of the statute," as the law requires.  Second, Plaintiffs lack standing under Article III of the Constitution because they have not pled – or suffered – *any* concrete or particularized injury as a result of the claimed FRCA violation.

In addition, because Ohio State has raised sovereign immunity and standing bars to this action, this Court should stay discovery in this case pending resolution of this Motion.  Alternatively, if this Court deems the standing question determinative of whether the case may proceed, this Court should stay this action until the United States Supreme Court rules on the

FCRA standing issue presented in the case captioned *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014) cert. granted, __U.S. __, 135 S. Ct. 1892 (2015).

## II.      Allegations of the Complaint

Plaintiffs allege, "upon information and belief," that when they applied for jobs at Ohio State they were provided with Ohio State's "standard background check and disclosure authorization form" as part of the hiring process.  (ECF #3, Compl., ¶ 32.)  Plaintiff Smith applied for a housekeeper position for the Ohio State medical center and was hired "in or about November, 2014."  (*Id.* ¶ 30.)  Plaintiff Sauder applied for a position as a manager for certain Ohio State medical facilities and was hired in or about November-December 2012.  (*Id.* ¶ 31.)

Plaintiffs claim that the materials Ohio State provided to them during the hiring process improperly contained certain disclosures and liability waivers on the same page, allegedly in violation of one provision of the FCRA, 15 U.S.C. § 1681b(b)(2)(A).  They assert two causes of action under the FCRA, both of which relate directly to the placement of the disclosure language on the same page as other text.  Count One asserts that Ohio State "violated the FCRA by the use of a disclosure form that contains extraneous information other than the disclosure, including a liability release."  (*Id.* ¶ 63.)  Count Two asserts that "[b]ecause [Ohio State] failed to make a clear and conspicuous disclosure that a consumer report may be procured in a document consisting solely of the disclosure, [Ohio State] violated the FCRA by procuring consumer reports . . . without proper authorization."  (*Id.* ¶ 71.)

Plaintiffs do not allege any specific harm caused by the claimed violation.  To the contrary, the Complaint acknowledges that Plaintiffs were *hired* by Ohio State (*id.* ¶ 31, 32), and there is no allegation that Ohio State has ever attempted to enforce the liability waivers or

otherwise sought to use any information it may have obtained during the application process to injure Plaintiffs in any way.

## III. Law and Analysis

Plaintiffs' FCRA claims are barred both by sovereign immunity and by Plaintiffs' lack of standing.[1]  A Rule 12(b)(1) motion is the appropriate vehicle by which to raise such threshold arguments.  *See, e.g., Living Care Alts. of Utica, Inc. v. United States*, 312 F.Supp.2d 929, 931 (S.D. Ohio 2004); *Ward v. Alt. Health Delivery Sys*., 261 F.3d 624, 626 (6th Cir. 2001).

### A. Sovereign Immunity Bars Plaintiffs' Claims Against Ohio State, a State Entity

Plaintiffs' claims against Ohio State, a state entity, are barred by the doctrine of sovereign immunity for two independent reasons.  First, Congress enacted the FCRA through exercise of its Commerce Clause power, and it is firmly established that Congress cannot invoke the Commerce Clause to override the sovereign immunity conferred by the Eleventh Amendment.  Second, regardless of whether or not Congress had the power to waive sovereign immunity through enactment of the FCRA, it clearly did not make its intention to waive the State's sovereign immunity "unmistakably clear," as courts require.

The Eleventh Amendment acknowledges that States have sovereign immunity from certain lawsuits.  It reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  The Supreme Court

---

[1] "In class action litigation, the named plaintiff purporting to represent a class must establish that he, personally, has standing to bring the cause of action.  If the named plaintiff cannot maintain the action on his own behalf, he may not seek such relief on behalf of the class." *Amburgy v. Express Scripts, Inc*., 671 F. Supp. 2d 1046, 1050 (E.D. Mo. 2009) (citing, inter alia, *Hall v. Lhaco, Inc.,* 140 F.3d 1190, 1196–97 (8th Cir. 1998)); *see also In re Science Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig*., 45 F.Supp.3d 14, 23 (D.D.C. 2014) ("[A]ll named Plaintiffs must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal quotation omitted, emphasis original).

has held that this language forbids private lawsuits by citizens against their own state. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

It is well settled that sovereign immunity applies not just to suits against a "State," but also to actions against "one of its agencies or departments." *Pennhurst*, 465 U.S. at 100; *see also Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280 (1977) (explaining that immunity extends to "an arm of the state"). It is indisputable that Ohio State is "an arm of the state," *see* Ohio Rev. Code § 3345.011 (listing "Ohio state university" as a state university), and the Sixth Circuit has "consistently held that Ohio public universities, as instrumentalities of the state, should receive the protection of sovereign immunity." *Fischer v. Kent State Univ*., 459 F. App'x 508, 510 (6th Cir. 2012); *see also Thomson v. Ohio State Univ. Hosp.,* 238 F.3d 424, published in full-text format at 2000 U.S. App. LEXIS 29206 (6th Cir. Nov. 8, 2000) (affirming dismissal of suit against Ohio State University Hospital on sovereign immunity grounds)*; Bailey v. Ohio State Univ*., 487 F.Supp. 601, 606 (S.D. Ohio 1980) (noting "Ohio State is the alter ego of the State of Ohio for eleventh (a)mendment purposes."). Accordingly, Ohio State is entitled to the same sovereign immunity as the State of Ohio.

Importantly, Congress has only limited power to abrogate sovereign immunity. In order to vitiate Eleventh Amendment immunity, Congress must *both* "act[] pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment" *and also* "make[] its intention to abrogate unmistakably clear in the language of the statute. . ." *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003) (citations omitted). In enacting the FCRA, Congress did neither – which means that Ohio State's sovereign immunity is intact and Plaintiffs' claims must be dismissed.

1.     *Congress Lacked Authority to Abrogate State Sovereign Immunity Through the FCRA Because it Acted Pursuant to its Commerce Clause Powers.*

It is indisputable that Congress enacted the FCRA pursuant to its Commerce Clause powers. *See, e.g., Hutchinson v. Carco Grp., Inc.*, No. 15-1570, 2015 U.S. Dist. LEXIS 130858, at *23 (E.D. Pa. Sept. 29, 2015) (collecting cases). Where Congress relies only on its Article I Commerce power to enact a statute, that statute cannot function to abrogate the States' immunity. *Hibbs*, 538 U.S. at 727 ("Congress may not abrogate the States' sovereign immunity pursuant to its Article I power over commerce." (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59–66 (1996))).

Accordingly, courts that have considered the issue have uniformly held that because Congress enacted the FCRA under its Commerce Clause power, the FCRA did not waive sovereign immunity with respect to the States. *See, e.g., Hutchinson*, 2015 U.S. Dist. LEXIS 130858, at *22–23; *Wright v. Applied Bank*, Civ. A. No. 11-585, 2012 U.S. Dist. LEXIS 122175, at *2 (D. Del. Aug. 28, 2012); *Bardes v. South Carolina*, No. 2:10-559-PMD-RSC, 2010 U.S. Dist. LEXIS 35993, at *4 (D.S.C. Mar. 11, 2010); *Densborn v. Trans Union, LLC*, No. 08 C 3631, 2009 U.S. Dist. LEXIS 10250, at *5 (N.D. Ill. Feb. 10, 2009); *Peaslee v. Illinois Student Assistance Comm'n*, No. 08 C 3167, 2008 U.S. Dist. LEXIS 86848, at *7–8 (N.D. Ill. Oct. 27, 2008); *Alexander v. Dist. Court of Maryland for Charles County*, No. DKC 2007-1647, 2008 U.S. Dist. LEXIS 106704, at *23 (D. Md. Mar. 20, 2008); *Betts v. Va. Empl. Comm'n*, No. 3.06cv753, 2007 U.S. Dist. LEXIS 10109, at *9 (E.D. Va. Feb. 2, 2007); *O'Diah v. New York City*, Civ. A. No. 02-274, 2002 U.S. Dist. LEXIS 15507 at *26 (S.D.N.Y. Aug. 21, 2002); *Richmond v. TRW Info Servs. Div.,* No. 96-1150, 1997 U.S. Dist. LEXIS 11559, at *9–10 (S.D. Cal. July 22, 1997). Indeed, no reported decision has held that, in enacting the FCRA, Congress

*did* waive the States' sovereign immunity. This Court should follow this uniform line of authorities and hold that Plaintiffs' FCRA claims are barred by Ohio State's sovereign immunity and must be dismissed.

> 2. *In Enacting the FCRA, Congress Did Not Make Any Intention to Abrogate Sovereign Immunity "Unmistakably Clear."*

Regardless of whether Congress had the authority to abrogate the States' sovereign immunity in enacting the FCRA – and it clearly did not for the reasons stated above – Plaintiffs' claims would fail because Congress did not "make[] its intention to abrogate unmistakably clear in the language of the statute," as precedent requires. *Hibbs*, 538 U.S. at 726.

The FCRA states, in relevant part, that a "person" has obligations to provide certain disclosures when procuring a credit report, 15 U.S.C. § 1681a(b), and defines "person" to include "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity," *id.* § 1681a(b). The definition of "person" does not mention either a "State" or "State entity," and therefore does not make it "unmistakably clear" that Congress intended the FCRA to waive the sovereign immunity of States. Indeed, cases in which courts have found a waiver involve statutes that – unlike the FCRA – refer explicitly to "States." *See, e.g., Dellmuth v. Muth,* 491 U.S. 223, 229–230 (1989) (discussing the 1986 amendments to the Rehabilitation Act and holding that the phrase, "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court. . . ." was "unmistakably clear" for purposes of waiver of sovereign immunity); *Lavia v. Pennsylvania*, 224 F.3d 190, 196 (3d Cir. 2000) (explaining that an example of Congress' use of "'unmistakably clear statutory language' is found in the Americans With Disabilities Act, which states, "A State shall not be immune under the eleventh amendment"); *Davidson v. Bd. of Governors of State Colls. & Univs.*, 920 F.2d 441, 443 (7th Cir. 1990)

(explaining that the Age Discrimination in Employment Act is "unmistakably clear" because it defines "employer" to include "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a state")..

Moreover, there is a longstanding presumption that a sovereign is not included within the term "person." "The presumption is particularly applicable where it is claimed that Congress has subjected the States to liability to which they had not been subject before." *United States ex rel. Chandler v. Cook County, IL.,* 277 F.3d 969, 980 (7th Cir. 2002). *See also Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 787 (2000) (holding that the False Claims Act does not encompass a State in its use of the word "person" in the statute); *Will* v. *Michigan Dep't of State Police*, 491 U.S. 58, 65, 109 S. Ct. 2304(1989) (holding that a State is not a "person" within the meaning of 42 U.S.C. § 1983). Furthermore, no court has interpreted the defined term "person" within the FCRA to encompass a State.

Because the FCRA does not mention "States" in any way, and therefore does not make "unmistakably clear" any intent to waive State sovereign immunity, Plaintiffs' FCRA claims against Ohio State must be dismissed for that reason as well.

**B.    Plaintiffs Lack Article III Standing Because They Have Not Alleged An Injury-in-Fact.**

This case should be dismissed for still another reason. Plaintiffs in federal court must establish standing under Article III of the Constitution. *See Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606 (6th Cir. 2007) (citing *Bender v. Williamsport Area Sch. Dist*., 475 U.S. 534, 541 (1986)). In this case, Plaintiffs lack Article III standing because they have not alleged a cognizable injury-in-fact.

1. *Plaintiffs Lack Article III Standing.*

Article III standing is a fundamental jurisdictional requirement that defines the Court's power to resolve cases or controversies.  *See Bench Billboard Co. v. City of Covington, Ky.*, 465 F.App'x 395, 397 (6th Cir.2012) ("requirement that a claimant have standing is an essential and unchanging part of the case-or-controversy requirement of Article III").  To meet the "irreducible minimum" requirements of constitutional standing, Plaintiffs must demonstrate:

> (1) that they have suffered injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical,
>
> (2) that a causal link exists between the injury and the conduct complained of, — i.e., that the injury fairly can be traced to the challenged action of the defendant, and
>
> (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
>
> Each requirement is an indispensable part of the plaintiff's case and must be supported in the same way as any other matter on which the plaintiff bears the burden of proof.

*Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 461 (6th Cir. 2007), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) and *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976).

A mere "abstract injury" does not satisfy the injury-in-fact requirement.  *O'Shea v. Littlejohn*, 414 U.S. 488, 494 (1974).  To have standing to bring a claim, "a plaintiff must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Allen v. Wright*, 468 U.S. 737, 751 (1984) (emphasis added).  While "Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules, . . . Art. III's requirement remains: the plaintiff still must allege *a distinct and palpable injury to himself* . . . ."  *Warth v. Seldin*, 422 U.S. 490, 501–502 (1975)

(emphasis added) (finding that plaintiffs lacked standing because none had "allege[d] specific, concrete facts demonstrating that the challenged practices harm[ed] him.")

A statutory violation, without more, is not a substitute for an injury-in-fact because the fact that a legal standard has been breached says nothing about whether any harm has been inflicted on anyone, let alone a harm that is "concrete," "actual," and "particularized." *See Operation Indep. Drivers Ass'n, Inc. v. USIS Commercial Servs., Inc*., 537 F.3d 1184, 1194 (10th Cir. 2008) (injury is an element of a claim for FCRA statutory damages); *US v. Weiss*, 467 F.3d 1300, 1310–11 (11th Cir. 2006) ("federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action") (citations omitted); *Washington v. CSC Credit Servcs.,* 199 F.3d 263, 266 (5th Cir. 2000) (the purpose of the FCRA is "not furthered unless [before filing suit] a plaintiff suffers the harm the procedures are meant to prevent."). *See also Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 122–123 (2d Cir. 2009) (finding no standing to bring a claim for deprivation of a right to a plan compliant with ERISA, because no injury or deprivation beyond the technical statutory violation was alleged); *Joint Stock Soc'y v. UDV N. Am. Inc.*, 266 F.3d 164, 185 (3d Cir. 2001) (finding no standing to bring a Lanham Act violation claim where there was no actual harm from false advertising).

Here, Plaintiffs allege a purely technical violation of the FCRA that caused them no concrete or particularized harm. Plaintiffs allege only that they received the information that the FCRA required Ohio State to provide (the disclosure) and additional text (an otherwise legal liability release) in the same document. (ECF #3, Compl., ¶¶32, 35). Plaintiffs do not allege that they suffered ***any*** harm as a result of this claimed violation; indeed, both Plaintiffs were hired into the positions for which they applied. (*Id.* ¶¶30-31).

Although some authorities hold to the contrary,[2] Ohio State submits that Plaintiffs' allegation that Ohio State committed a technical breach of the FCRA by presenting both the FCRA disclosure and a release in a single document does not establish the necessary "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen*, 468 U.S. at 751.[3]

    2.    *Sixth Circuit Precedent Should Not Be Interpreted to Confer Standing.*

The Sixth Circuit has not addressed whether a technical violation of the FCRA, without ***any*** allegation of personal harm, is sufficient to confer standing on a Plaintiff, although it has addressed the issue of FCRA standing in the context of a claim by a plaintiff who alleged that false and negative information appeared in her check verification report. *See Beaudry v. TeleCheck Servcs.,* 579 F.3d 702 (6th Cir. 2009). Notably, in *Beaudry*, the Sixth Circuit expressly ***did not*** reach the question of whether a technical "violation that hurts no one" and that "creat[ed] no inaccuracies in the data used to generate reports," would satisfy the constitutional standing requirement because "that interesting problem is not presented here." *Beaudry*, 579 F.3d at 708. As a result, *Beaudry* left open the precise issue presented in this case.

---

[2] *See Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014) (holding that with regard to willful violations of the FCRA, a plaintiff is not required to show actual harm and need only allege a violation of the FCRA to have standing; case currently pending before Supreme Court); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952–53 (7th Cir. 2006) (ruling that the FCRA "provide[s] for modest damages without proof of injury."); *see also Hammer v. Sam's East, Inc.*, 754 F.3d 492 (8th Cir. 2014) (similar holding regarding the Fair and Accurate Credit Transactions Act).

[3] As the Fifth Circuit Court of Appeals noted, the question of standing to bring an FRCA claim must be considered in light the main purposes of Section 1681b – to assure that consumer reports are furnished "with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *Washington*, 199 F.3d at 266 (emphasis original), citing 18 U.S.C. § 1681(b). Absent a concrete showing of actual harm resulting from the circumstances Congress sought to prevent – such as generation of a false report that has tangible consequences – the purpose of the statute "is not furthered," and the person claiming a mere technical statutory breach has no standing. *Id.* at 267 ("In light of the purposes of the FCRA, we find that the actionable harm the FCRA envisions is improper disclosure, not the mere risk of improper disclosure that arises when 'reasonable procedures' are not followed and disclosures are made.")

3.  *Interpreting the FCRA to Confer Standing Disrupts the Balance of Powers.*

The FCRA should not be interpreted to allow plaintiffs who are unable to demonstrate standing to sue – by demonstrating the concrete and particularized personal harm that is one of the "irreducible minimum" requirements of standing under Article III of the Constitution – because Congress has not clearly stated that it intended that result.

If Congress intends to disrupt the established constitutional balance through legislation (for example, by allowing no-harm, technical statutory violation to substitute for the Article III injury-in-fact requirement), Congress must clearly state that intention in the statutory text.  *See, e.g., Kukana v. Holder*, 558 U.S. 233, 237 (2010) ("Separation-of-powers concerns, moreover, caution us against reading legislation, absent clear statement, to place in execute hands authority to remove causes from the Judiciary's domain."); *Boumediene v. Bush*, 553 US. 723, 738 (2008) (absent an "unmistakably clear statement [by the Congress] to the contrary," habeas relief will remain available).

The FCRA contains no such statement.  It simply provides, in pertinent part, that a proof of a negligent violation of its requirements allows a consumer to obtain "actual damages," while proof of a willful violation – which is what Plaintiffs allege here (*see* Compl. ¶ 66) – allows a consumer to choose between recovery of "actual damages" and statutory "damages of not less than $100 and not more than $1,000."  *See* 15 U.S.C. § 1681n(a)(1), 1681o(a)(1).  The statutory language therefore does not relieve plaintiffs who, like Plaintiffs here, seek statutory damages of their obligation to show the actual, concrete injury needed to establish Article III standing.  Rather, the more appropriate reading of Section 1681n is that, when a consumer who has been injured meets the heightened requirements for showing a willful violation of the statute, that consumer may elect to receive statutory damages in order to avoid problems in proving the

*amount* of the actual damages caused by their injury. In short, FRCA does *not* contain a clear statement by Congress that it intended to do away with the traditional concrete harm prerequisite for standing, and the statute therefore should not be construed to have that effect.

## C. This Court Should Stay Discovery in This Litigation Pending Resolution of the Motion to Dismiss and/or the Supreme Court's Decision in *Spokeo*.

Discovery in this litigation should be stayed pending resolution of this Motion to Dismiss. Moreover, should the Court deem the standing issue dispositive of whether the case may proceed, then it should stay the entire action pending resolution of *Spokeo.* The issue presented in *Spokeo,* whether "Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute," is directly relevant to this Court's resolution of the standing argument raised here.

A stay is warranted when a motion raises "immunity from suit, which would be substantially vitiated absent a stay." *Williamson v. Recovery Ltd. P'ship*, No. 2:06-CV-0292, 2010 U.S. Dist. LEXIS 19873, at *8 (S.D. Ohio Feb. 10, 2010). This is particularly relevant when a state or state entity raises a sovereign immunity defense. In considering the application of sovereign immunity, the United States Supreme Court has held, ". . . a motion by a State or its agents to dismiss on Eleventh Amendment grounds involves a claim to a fundamental constitutional protection. . ." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145, 113 S.Ct. 684 (1993) (citation omitted). *See also Univ. of Texas at Austin v. Vratil*, 96 F.3d 1337, 1339–40 (10th Cir. 1996) (explaining that state universities, as arms of the state, are entitled to 11th Amendment immunity from suit, and stating, "Eleventh Amendment immunity entitles a state not only to protection from liability, but also from suit, including the burden of discovery, as a party, within the suit.") (Emphasis added); *DRFP L.L.C. v. Republica*

*Bolivariana De Venez.*, No. 2:04-cv-793, 2009 U.S. Dist. LEXIS 105094, at *22–23 (S.D. Ohio Nov. 9, 2009) (Holschuh, J.) (staying discovery during pendency of interlocutory appeal on sovereign immunity issues because, "Defendants will in fact be injured by allowing discovery to continue, because the sovereign immunity at issue in this case is an immunity from legal action and proceedings altogether. Forcing Defendants to participate in court-ordered discovery will deprive Defendants of this immunity.")

In considering a request for a stay, a district court must weight "competing interests and maintain an even balance" and should consider the interests of judicial economy, hardship to the moving party if the action is not stayed, and potential prejudice to the non-moving party. *Ohio v. United States EPA*, No. 2:15-cv-2467, 2015 U.S. Dist. LEXIS 116417, at *7 (S.D. Ohio Sept. 1, 2015), *citing Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163 (1936).

Here, because Ohio State has asserted a valid sovereign immunity defense, discovery in this litigation should be stayed pending resolution of Ohio State's Motion. Moreover, because the Supreme Court's decision on FCRA standing in *Spokeo* will directly impact the FCRA standing argument raised by Ohio State, if the Court deems the standing question determinative of whether the case may proceed, this Court also should stay discovery in this action until the *Spokeo* decision is announced. Staying discovery pending a ruling on Ohio State's sovereign immunity arguments and until the Supreme Court rules in *Spokeo* would recognize Ohio State's clear interest in maintaining its sovereign immunity protection, avoid unnecessary proceedings and expenses, and conserve judicial resources. Ohio State notes that other courts have stayed similar cases pending the resolution of the *Spokeo* appeal. *See Schartel v. OneSource Tech., LLC*, No. 1:15 CV 1434, 2015 U.S. Dist. LEXIS 155967, at *4–5 (N.D. Ohio Nov. 17, 2015)

(Gaughan, J.) (staying proceedings pending resolution of *Spokeo*); *Hillson v. Kelly Servs.*, 2:15-CV-10803, 2015 U.S. Dist. LEXIS 97958 ( E.D. Mich. July 15, 2015) (Patti, J.) (same).

## IV.  Conclusion

Because sovereign immunity bars Plaintiffs' claims against Ohio State, and because Plaintiffs lack standing to assert FCRA claims, all of Plaintiffs' claims against Ohio State should be dismissed.  Due to these jurisdictional bars, and particularly Ohio State's sovereign immunity defense, this Court should stay discovery in this action pending resolution of this Motion. Alternatively, if the Court deems the standing question determinative of whether the case may proceed, this Court should stay this action pending resolution of *Robins v. Spokeo*, a case now before the United States Supreme Court that raises the same issues of standing under the Fair Credit Reporting Act that are presented here.

Respectfully submitted,

MICHAEL DEWINE (0009181)
Ohio Attorney General

*/s/ Robert N. Webner*
Robert N. Webner (0029984) (Trial Attorney)
Martha Brewer Motley (0083788)
VORYS, SATER, SEYMOUR and PEASE LLP
52 E. Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
T:  (614) 464-5626 / F: (614) 719-5080
rnwebner@vorys.com
mbmotley@vorys.com

*Special Counsel for Defendant*
*The Ohio State University*

Of Counsel:
Lee Ann Rabe (0077170)
Randall W. Knutti (0022388)
Principal Assistant Attorneys General
Court of Claims Defense Section
150 East Gay Street, Floor 18
Columbus, Ohio 43215
T: (614)466-7447 / F: (614)644-9185
LeeAnn.Rabe@OhioAttorneyGeneral.gov
Randall.Knutti@OhioAttorneyGeneral.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 14, 2015, a true and correct copy of the foregoing has been served via the Court's ECF system on all counsel of record.


*/s/ Robert N. Webner*
Robert N. Webner