**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEANNA SMITH, et al., | : | Case No.: 2:15-cv-03030 |
| | : | |
| Plaintiffs, | : | Judge Smith |
| | : | |
| v. | : | Magistrate Judge Deavers |
| | : | |
| THE OHIO STATE UNIVERSITY, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFFS DEANNA SMITH'S AND HARMONI SAUDER'S OPPOSITION TO
DEFENDANT THE OHIO STATE UNIVERSITY'S MOTION TO DISMISS**

I.    **INTRODUCTION**

Plaintiffs Deanna Smith and Harmoni Sauder ("Plaintiffs") properly filed this case in the Ohio Court of Claims, where the state and its instrumentalities have waived immunity to be sued for both state and federal claims, including Plaintiffs' claims arising under the Fair Credit Reporting Act ("FCRA").  *See* Ohio Rev. Code §2743.02 (A)(1).  Defendant then removed the action to this Court purely for the purpose of seeking dismissal.  By invoking federal jurisdiction to gain a tactical advantage as to claims Defendant would otherwise be forced to face in the Ohio Court of Claims, Defendant waived its Eleventh Amendment sovereign immunity.  *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 614 (2002).  Defendant's argument that Plaintiffs lack Article III standing because they have not stated a cognizable injury-in-fact also fails.  Under Sixth Circuit precedent a consumer has Article III standing to sue for willful violations of the FCRA in the absence of actual damages.  *Beaudry v. Telecheck Servs., Inc.*, 579 F.3d 702, 705-707 (6th Cir. 2009).  Indeed, the Sixth Circuit has recognized that Congress has the power to create new legal rights whose only injury-in-fact is the violation of a statutory right.  *Id.* at 707.  Accordingly, Defendant's Motion to Dismiss ("Motion") should be denied.

Defendant's concurrent request to stay discovery also should be denied.  Unlike the Plaintiff in *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014), cert. granted, __ U.S. __, 135 S.Ct. 1892 (2105), Plaintiffs here did not, and have not, sought to invoke the jurisdiction of a federal court.  Defendant should be estopped from moving to stay by challenging the very jurisdiction Defendant sought to invoke in the first place.  Furthermore, because standing is an element of subject matter jurisdiction, *even if* the Supreme Court's decision in *Spokeo* compels a finding that Plaintiffs lack Article III standing, this case would not be dismissed, but rather would be remanded back to the Court of Claims.  *See* 28 U.S.C. §1447(c) (requiring remand if at any time before final judgment

1

subject matter jurisdiction is found to be lacking).  Allowing the parties to proceed with discovery thus serves the interests of justice and efficiency as the resolution of *Spokeo* will, at most, merely result in a change of venue.  Finally, because Defendant waived its Eleventh Amendment immunity, and because remand would similarly be the logical course of action even if it were determined Defendant is immune from suit in federal court, Defendant's sovereign immunity defense likewise does not support a stay.

## II.    STATEMENT OF RELEVANT FACTS

Enacted in 1970, the FCRA's passage was largely driven by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing; second, despite their importance, consumer reports were unregulated and had widespread errors.  Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure their "confidentiality, accuracy, relevancy, and proper utilization."  15 U.S.C. §1681.  To achieve these purposes, the FCRA requires, among other things, that employers make a clear and conspicuous written disclosure to employees and job applicants, in a document that consists *solely* of the disclosure, of the fact that a consumer report may be procured for employment purposes.  *Id*. at §1681b(b)(2).  This is commonly known as the stand-alone disclosure requirement.  The FCRA further requires that employers obtain written authorization prior to procurement of a consumer report for employment purposes.  *Id*.

Defendant is the State of Ohio's largest employer, with tens of thousands of current and former employees.  Plaintiff Deanna Smith is a current employee, and plaintiff Harmoni Sauder is a former employee.  Plaintiffs allege that Defendant violated the FCRA by including a liability release and other extraneous information in the consumer report disclosure and authorization form provided to Plaintiffs during the job application process.  On the basis of these allegations Plaintiffs allege two

causes of action. Plaintiff's First Cause of Action alleges that Defendant willfully violated the FCRA's stand-alone disclosure requirement. Complaint [ECF 3], ¶¶62-69. Plaintiff's Second Cause of Action alleges that because Defendant failed to make a clear and conspicuous disclosure in a stand-alone document, Defendant violated the FCRA by procuring consumer reports relating to Plaintiffs and class members without proper authorization. *Id*. at ¶¶70-75. Plaintiffs specifically allege that both their privacy and statutory rights were violated by Defendant's conduct. *Id*. at ¶¶5-6.

## III.   ARGUMENT

### A.   Eleventh Amendment Sovereign Immunity Does Not Bar Plaintiffs' Claims

#### 1.   The State Of Ohio Has Waived Its Sovereign Immunity To Federal Causes Of Action Brought In The Ohio Court Of Claims

Plaintiff does not dispute the general Eleventh Amendment principals of sovereign immunity espoused by Defendants. *See* Motion at 5-9. However, the inquiry does not end there. Significantly, and definitively in this case, the State of Ohio has explicitly **_waived_** its immunity to federal actions, such as this FCRA action, and subjected itself to liability in the Ohio Court of Claims:

> **The state hereby waives its immunity from liability . . . and consents to be sued, and have its liability determined, in the court of claims created in this chapter….**

Ohio Rev. Code § 2743.02(A)(1) (emphasis added); *see also* Ohio Rev. Code § 2743.03(A)(1) (conferring jurisdiction).

The Sixth Circuit, sitting *en banc*, has authoritatively held that the State of Ohio's waiver of sovereign immunity under § 2743.02 is broad, and extends to both state and federal claims.[1] *Leaman v. Ohio Dept. of Mental Retardation & Developmental Disabilities*, 825 F.2d 946, 951-55 (6th Cir.

---

[1] The only relevant limitation to Ohio State's liability is the prohibition against punitive or exemplary damages in suits against state colleges or universities. Ohio Rev. Code § 3345.40(B)(1). Plaintiffs do not seek exemplary or punitive damages.

3

1987) (*en banc*) (in action alleging violation of 42 U.S.C. §1983, the Court held that "[t]he Ohio Court of Claims Act waives the state's sovereign immunity and declares that the state consents to be sued in the Court of Claims."). In *Leaman*, the Court analyzed whether a provision in the Ohio Court of Claims Act providing that the filing of a civil action in the Court of Claims waives any cause of action the plaintiff has against state officers or employees applies to federal claims. Answering in the affirmative, the Court explained that "[t]he Ohio statute gives claimants an option otherwise not available to them...." *Id*. at 953. In the case of the federal claim presented in *Leaman*, this option was to sue the state in the Court of Claims, which lawsuit would not have been available absent the Court of Claims Act because of Eleventh Amendment sovereign immunity, in exchange for foregoing any such claim against state officers or employees. Construing and explaining the breadth and effect of the Court of Claims Act, the Sixth Circuit observed:

> Ohio was under no constitutional duty to let itself be sued at all, and it was not unreasonable for the state to tell prospective plaintiffs — in words not unlike those used by the United States itself in the Federal Tort Claims Act — "we will agree to let you sue the sovereign if you will agree to surrender your claims against the sovereign's servants."

825 F.2d at 954.

Thus, *Leaman* definitively established that the State of Ohio waived its immunity from both federal and state law actions against it by virtue of the Court of Claims Act. *Id. See also Thomson v. Harmony*, 65 F.3d 1314, 1320 (6th Cir. 1995) (explaining that *Leaman* is the law of the Circuit and "remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification or this Court sitting *en banc* overrules the prior decision."); *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 460 (6th Cir. 1998) ("[W]e are precluded from departing from *Leaman* and *Thomson's* holdings. That can only be done by *an en* banc court.").

Similarly, in *Manning v. Ohio State Library Bd.*, 577 N.E.2d 650, 652-55 (Ohio 1991), the

Supreme Court of Ohio held that, pursuant to § 2743.03(A)(1), the Ohio Court of Claims had "exclusive, original subject matter jurisdiction" over federal Title VII actions seeking money damages against the state, and noted that pursuant to the Court of Claims Act, "'the state waives its immunity from all suits *of whatever nature*.'" *Id.* (quoting Am. H.B. No. 800, 110th General Assembly) (emphasis added).  The Court reasoned that, while state courts had concurrent jurisdiction with federal courts over Title VII claims generally, a Title VII claim against the State of Ohio for monetary damages must be filed in the Court of Claims. *Id.* at 653-654.  Thus, in *Kelley v. Dailey*, 706 N.E.2d 28, 30-31 (Ohio Ct. App. 1997), the Ohio Court of Appeals properly held that the Court of Claims Act "waived the state's sovereign immunity" for claims of monetary damages and injunctive relief, and that the Court of Claims had exclusive jurisdiction over the plaintiff's Fair Labor Standards Act claim.  The Court further noted that "'[a] major purpose of the Court of Claims Act was to centralize the filing and adjudication of *all* claims against the state.'" *Id.* at 302 (quoting *Friedman v. Johnson*, 480 N.E.2d 82, 84 (Ohio 1985) (emphasis added).

In sum, pursuant to § 2743.02, the State of Ohio has waived its immunity to federal actions brought in the Court of Claims, and thereby subjected Defendant to liability under the FCRA and pursuant to Plaintiffs' FCRA complaint, which was properly filed in the Court of Claims

> **2.    Defendant Waived Its Eleventh Amendment Sovereign Immunity From Federal Court Proceedings By Voluntarily Removing This Case From The Ohio Court Of Claims**

A state may not remove a case from state court to federal court to gain a "tactical advantage" by attempting to reassert Eleventh Amendment immunity that is otherwise waived. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 614 (2002).  In *Lapides*, the Supreme Court held that the State of Georgia waived its sovereign immunity from federal court proceedings by voluntarily removing claims from state court (where a state statute had waived its immunity) to federal court (where Georgia maintained it was entitled to dismissal on the grounds of sovereign

immunity). *Id.* at 613, 614.  The Court began its analysis by noting that it "has established the general principle that a State's voluntary appearance in federal court amounts to a waiver of its Eleventh Amendment immunity."  *Id.* at 613 (citations omitted).  The Court reasoned that general principle should apply because to hold otherwise would be to grant the state an unfair "tactical advantage."  *Id.* at 621. *See also Embury v. King*, 361 F.3d 562, 566 (9th Cir. 2004) ("Allowing a State to waive immunity to remove a case to federal court, then 'unwaive' it to assert that the federal court could not act, would create a new definition of chutzpah.").

Similarly here, Defendant was properly subject to Plaintiffs' FCRA claims in the Ohio Court of Claims, with the State having waived its immunity from federal actions vis-à-vis the Ohio Court of Claims Act. *See* Sec. III.A.1., *supra.* The State cannot be allowed to gain the unfair tactical advantage of re-claiming the immunity that it explicitly waived solely by virtue of removal.[2]

Courts around the country agree.  Although *Lapides* involved a state law claim, the Second, Third, Fifth, Seventh, Ninth, Tenth and Eleventh Circuits all have applied the reasoning in *Lapides* to find a waiver of sovereign immunity where states have removed federal, as well as state, claims. *See Beaulieu v. Vermont*, 807 F.3d 478, 490 (2nd Cir. 2015) (holding that state waived Eleventh Amendment sovereign immunity by removing FLSA case); *Lombardo v. Penn. Dept. of Public Welfare*, 540 F.3d 190, 193, 197-198 (3rd Cir. 2008) ("Commonwealth's voluntary removal unequivocally invoked the jurisdiction of the federal courts and thereby waived the Commonwealth's Eleventh Amendment immunity from suit in a federal forum"); Meyers *v. Texas*, 410 F.3d 236, 242, 244 (5th Cir. 2005) (holding that Texas waived sovereign immunity by voluntarily removing a claim under the Americans with Disabilities Act, the court reasoned that "the

---

[2] The fact that the state has waived immunity as to cases brought in the Court of Claims, and not as to cases brought in other Ohio state courts, does not alter the applicability of *Lapides*.  *Univ. of Cincinnati v. Red Cedar Solutions*, 2015 WL736425, at n. 3 (S.D. Ohio Feb. 20, 2015).

waiver-by-removal rule[] applies generally to any private suit which a state removes to federal court" and "the [*Lapides*] Court's reasoning, rule-making, and choice of precepts were derived from generally applicable principles 'serving the judicial need to avoid inconsistency, anomaly, and unfairness' in states' claims of immunity in all types of federal litigation.") (internal citations omitted); *Bd. of Regents of the Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 460-62 (7th Cir. 2011) (in finding that Wisconsin was not entitled to assert sovereign immunity from the plaintiff's federal counterclaims, the court held that rationale in *Lapides* was not limited to the removal of state law claims, and a state waives its immunity when "a voluntary change in [its] behavior…demonstrates that it is no longer defending the lawsuit and is instead taking advantage of the federal forum"); *Embury*, 361 F.3d at 566 (in holding that California waived sovereign immunity by voluntarily removing an action for state and federal claims, the court explained "nothing in the *reasoning* of *Lapides* supports limiting the waiver…to state law claims only"); *Estes v. Wyo. Dep't of Transp.*, 302 F.3d 1200, 1204-06 (10th Cir. 2002) (*Lapides* stands for the "unremarkable proposition that a State waives its sovereign immunity by voluntarily invoking the jurisdiction of the federal courts"); *Stroud v. McIntosh*, 722 F.3d 1294, 1302 (11th Cir. 2013) (Alabama Board of Pardons and Paroles waived Eleventh Amendment sovereign immunity when it removed case brought under Title VII, 42 U.S.C. §1983 and the federal Age Discrimination Act).[3]

---

[3] District courts around the country have similarly applied *Lapides* to find waiver of Eleventh Amendment sovereign immunity as to the removal of federal claims. *See, e.g.*, *Franklin v. Lewis*, No. 13-cv-03777, 2015 WL 3509341, at *2 (N.D. Cal. 2015) (holding based on *Lapides* that "because Defendants removed this case to federal court, they waived their Eleventh Amendment immunity as to the entire case, including both state and federal claims"); *Risos-Camposano v. Nev. Sys. of Higher Educ.*, No. 3:14-cv-00181, 2014 WL 5503128, at *6 (D. Nev. 2014) (state's removal to federal court resulted in waiver of Eleventh Amendment immunity as to plaintiff's state and federal claims); *Gazzo v. Miss. Dept. of Pub. Safety*, No. 1:09-cv-719, 2011 WL 1841258, at *2-3 (S.D. Miss. 2011) (holding in case brought under 42 U.S.C. §1983 and federal Age Discrimination Act that state, which had waived liability for the plaintiff's claims, waived sovereign immunity by removing case to federal court); *Anderson v. Bd. of Regents of Univ. System of Ga.*, 822 F. Supp.2d

The Sixth Circuit similarly recognized the broad reach of *Lapides* when it held that the state had waived immunity to be sued for a federal claim filed in federal court when it failed to raise the immunity defense at the outset of litigation. *Ku v. State of Tenn.*, 322 F.3d 431, 435 (6th Cir. 2003). The Court observed that *Lapides* created a "clear rule of waiver by removal" which indicates that the jurisdictional bar of the Eleventh Amendment should be treated as an issue of personal jurisdiction, that may be permanently waived if not raised at the outset of proceedings, rather than an issue of subject matter jurisdiction. *Id*. at 434-435. The Court explained:

> [B]y creating a clear rule of waiver by removal, the Supreme Court has unequivocally rejected the view that, in cases over which the federal court otherwise has original jurisdiction, the additional "jurisdictional bar" created by the Eleventh Amendment should be treated as a matter of "subject matter" jurisdiction. To say that voluntary removal constitutes a clear waiver is inconsistent with treating Eleventh Amendment immunity as a matter of subject matter jurisdiction. Instead, the rule is consistent only with the view that the immunity defense in cases otherwise falling within a federal court's original jurisdiction should be treated like the defense of lack of personal jurisdiction….

*Id*.

The court went on to hold that the defendant's litigation conduct created "the same kind of 'inconsistency and unfairness' the Supreme Court was concerned with in *Lapides*" and found waiver

---

1342, 1355 (N.D. Ga. 2011) (noting, in case based in part on federal Age Discrimination Act, that "[t]here appears to be no disagreement that, by voluntarily removing a case, and thereby invoking a federal form, the State has lost its right under the Eleventh Amendment to complain about being in federal court"); *Clemmer v. State of Fla.*, No. 405-cv-349, 2005 WL 2656608, at *1 (N.D. Fla. 2005) (state's removal of case with federal claim waives Eleventh Amendment sovereign immunity defense); *Farmer v. Camden City Bd. of Educ.*, No. 03-685, 2005 WL 984376, at *5-7 (D. N.J. 2005) (in age discrimination case brought under both federal and state law, holding that defendant's removal to federal court constituted waiver of immunity under *Lapides*); *Johnson v. Conn. Dept. of Corrections*, 392 F.Supp.2d 326, 335 (D. Conn. 2005) (holding that the reasoning of *Lapides* "clearly extends to removal of federal claims").

based on "the only consistent view of the line of authority endorsed in *Lapides*." *Id*. at 435.  Thus, the Sixth Circuit has applied the logic of *Lapides* to federal claims.  District courts within the Sixth Circuit have similarly recognized the broad applicability of *Lapides*.  See *Baum Rsch. & Dev. Co., Inc. v. Univ. of Mass.*, No. 1:02-cv-674, 2006 WL461224, at *3-5 (S.D. Mich. Feb. 24, 2006) (holding on basis of *Lapides* that University waived sovereign immunity in case based on both state and federal claims by agreeing to contractual provision providing for resolution of disputes in federal court, because to hold otherwise would permit University to selectively hide behind the "cloak of sovereign immunity" to gain a tactical litigation advantage); *Horton v. 48th Dist. Ct.*, No. 2:05-cv-72356, 2006 WL 3386588, at *4 (E.D. Mich. Nov. 21, 2006) (holding on basis of *Lapides* and *Ku* that defendant in 42 U.S.C. § 1983 case filed initially in federal court waived Eleventh Amendment immunity by failing to raise immunity defense at outset of litigation).  Significantly here, Defendant did not raise any immunity defense at the outset of this litigation. Indeed, Defendant knew the defense was not available because of the State's explicit waiver.

Moreover, while a first blush reading of the Sixth Circuit's decision in *Agrawal v. Montemagno*, 574 Fed.Appx. 570 (6th Cir. 2014) may appear to suggest that the Sixth Circuit has limited application of *Lapides* to state law claims, a close reading of the case supports a finding that Defendant has waived immunity as to the federal law claim in this case.  In *Agrawal* the court noted that while the plaintiff originally filed in the Court of Common Pleas of Hamilton County, the case – which sought monetary damages against the State of Ohio – rightly should have been filed in the Court of Claims.  574 Fed. Appx. at 573.  Observing that the waiver rule of *Lapides* is "limited to state law claims for which the state has waived or abrogated its immunity[,]" the court held that removal of the case to federal court did not constitute waiver of immunity from federal proceedings because there was no initial waiver of immunity in the state trial court.  *Id*.

It is clear from the context of *Agrawal*, as well as the authority cited therein, that the Court did not intend to suggest with this statement that *Lapides* can never apply to federal claims. Rather, the Court was simply explaining that under *Lapides* the removal of a state law claim only constitutes a waiver of sovereign immunity where the defendant has waived immunity to be sued in the particular state court from which the action was removed.[4]  The Court in *Agrawal* declined to find a waiver of sovereign immunity *solely because the State of Ohio had never previously waived immunity in the court where the plaintiff in that case originally filed suit.*  Because the State had not waived its immunity against the plaintiff's suit in the Court of Common Pleas, the State's removal to Federal Court did not constitute a waiver of immunity from Federal Court proceedings. *Id.* Put another way, the defendant state in *Agrawal* gained no tactical advantage through removal.[5]

    *Agrawal* stands for the unremarkable proposition, which *supports* a finding of waiver in this case, that where the state has otherwise waived immunity and consented to jurisdiction, the state cannot seek a tactical advantage via removal. *See  Agrawal*, 574 Fed.Appx. at 573 (citing *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell–Jolly*, 572 F.3d 644, 661 (9th Cir. 2009) for the proposition

---

[4] Although the Plaintiff in *Agrawal* also alleged federal claims against the university defendant, those claims were dismissed by the District Court on the ground that the university was not a person under 42 U.S.C. §§ 1981 and 1983. *See* Case No. 1:10-cv-766, April 27, 2011 Order at 11 [ECF 13].  Consequently, the Circuit Court only addressed the issue of sovereign immunity waiver as to plaintiff's state law breach of contract claim.

[5] In *Community Mental Health Servs. of Belmont v. Mental Health and Recovery Bd. of Belmont*, 395 F.Supp.2d 644 (S.D. Ohio 2004), the plaintiff's initial complaint was likewise improperly filed in the Court of Common Pleas of Belmont County, and not the Court of Claims.  In a footnote, the Court dismissed plaintiff's argument that defendant waived Eleventh Amendment sovereign immunity through removal, noting "the MHRB [the defendant] seeks Eleventh Amendment immunity only with respect to the MHRB's administration of the Medicaid program.  The MHRB does not assert immunity to any state claim, thus *Lapides* is inapplicable." 395 F.Supp.2d 644 at n. 1.  Plaintiffs respectfully submit that to the extent this unexamined comment in the footnote of a 2004 opinion suggests *Lapides* can never apply to federal claims, it should not be followed.  *Lapides* itself contains no such limitation, and as discussed *supra* its logic has been extended to federal claims both within and outside the Sixth Circuit.

that "*a state that consents to suit in state court cannot invoke a sovereign immunity defense after removing the suit to federal court*") (emphasis added).[6]

Here, in stark contrast to the plaintiff in *Agrawal*, Plaintiffs *have* properly filed their FCRA claim in the Ohio Court of Claims, where the State of Ohio has waived its immunity and subjected itself to jurisdiction for both state and federal causes of action. *See* Sec. III.A.1, *supra*. To allow Defendant to "unwaive" immunity by virtue of the removal would confer upon it a significant and unfair tactical advantage of the exact nature that the U.S. Supreme Court admonished against in *Lapides*. In sum, this court should hold, in line with *Lapides* and its progeny that "a state that consents to suit in state court cannot invoke a sovereign immunity defense after removing the suit to federal court." *Agrawal*, 574 Fed.Appx. at 573 (citation omitted). Accordingly, because Defendant waived its Eleventh Amendment sovereign immunity to Plaintiffs' underlying FCRA action by virtue of the Ohio Court of Claims Act, it has waived its immunity against these federal court proceedings by virtue of its voluntary removal of the action.

### B.    Plaintiffs Have Article III Standing

Current Sixth Circuit Precedent holds that Plaintiffs have standing to proceed with their claims. *See Beaudry v. Telecheck Servs., Inc.*, 579 F.3d 702, 705-707 (6th Cir. 2009) (holding that a plaintiff who alleges statutory damages for a willful violation of the FCRA has Article III standing in the absence of actual damages). Indeed, in the briefing on the Petition for Writ of Certiorari in

---

[6] Other cases that have distinguished *Lapides* have similarly involved claims where the state had not waived immunity to suit in the forum from which the case was removed. *See, e.g.*, *Stewart v. North Carolina*, 393 F.3d 484, 488 (4th Cir. 2014), which is cited in *Agrawal*, and reasonably held that "North Carolina, having not already consented to suit in its own courts, did not waive sovereign immunity by voluntarily removing the action to federal court."

Again, this is far from the case here where the State of Ohio *has* consented to suit in the Court of Claims, and falls squarely in line with the precedent of other circuits that widely hold that once a state consents to suit and waives immunity in a state court proceeding, it cannot "unwaive" immunity by virtue of removal to federal courts.

*Spokeo*, both the Petitioner and the Respondent cite the Sixth Circuit's decision in *Beaudry* as an example of a case which squarely held that the violation of a statutory right created by Congress may confer Article III standing.  Petitioner's Br. at 9; Respondent's Br. at 12.  The Supreme Court's decision to hear *Spokeo* does not alter this precedent.

Plaintiffs have pled that Defendant failed to give proper disclosure that a consumer report would be procured, and failed to obtain proper authorization for the procurement of a consumer report, in violation of 15 U.S.C §§1681b(b)(2)(A)(i) and (ii).  Complaint [ECF 3], at ¶¶62-75. Plaintiffs have standing to pursue these claims because Congress created a legal right under the FCRA, the violation of which constitutes an injury sufficient for constitutional standing purposes. *Dreher v. Experian Info. Solutions, Inc.*, 71 F. Supp.3d 572, 577 (E.D.Va. 2014).

The U.S. Supreme Court has established that "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute."  *Warth v. Seldin*, 422 U.S. 490, 514 (1975). Thus, Plaintiffs have standing, in part, because through the FCRA "Congress created rights to consumers and the cause of action to ensure them under the Act." *Ryals v. Strategic Screening Solutions, Inc*., No. 3:14CV643, 2015 WL 4606168, at *3 (E.D. Va. July 30, 2015).

Indeed, Congress struck a purposeful balance in FCRA cases by allowing limited statutory damages in cases in which the injury from the deprivation of an FCRA right often can be hard to prove. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("[I]ndividual losses [under the FCRA], if any, are likely to be small - [for example,] a modest concern about privacy [or] a slight chance that information would leak out and lead to identity theft. [Because the] actual loss is small and hard to qualify . . . statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury.").

In *Beaudry*, the Sixth Circuit expressly recognized that a plaintiff who suffers a willful violation of the FCRA has Article III standing in the absence of actual damages.  The plaintiff in *Beaudry* claimed that the defendant willfully violated the FCRA by incorrectly indicating in its systems that Plaintiff and class members were first time check writers when they were not.  Like the Plaintiffs here, the *Beaudry* plaintiff's private right of action was authorized by 15 U.S.C. §1681n, which provides that consumers may recover any actual damages, or statutory damages of $100 to $1,000 for willful violations of the FCRA.  579 F.3d at 705.  The defendant argued that the plaintiff lacked Article III standing because Plaintiff failed to allege that the inaccuracy had caused any harm, such as rejection of a check or an impact on credit.  The Court disagreed, holding:

> Because "actual damages" represent an alternative form of relief and because the statute permits a recovery when there are no identifiable or measurable actual damages, this subsection implies that a claimant need not suffer (or allege) consequential damages to file a claim.

*Id*.

In explaining this holding, the Court engaged in a lengthy review of the relevant case law endorsing  numerous cases that have reached a similar conclusion in the FCRA context, as well as other contexts.  *Id*. at 706-707.  The Court specifically held that plaintiff's claim presented no Article III standing issue because "Congress 'has the power to create new legal rights, [including] right[s] of action whose only injury-in-fact involves the violation of that statutory right.'"  *Id*. at 707 (quoting *In re Carter*, 553 F.3d 979, 988 (6th Cir. 2009)).

Defendants argue that *Beaudry* nonetheless does not control because of the Court's comment that the case does not present the "interesting problem" of a violation that creates no inaccuracies, or that creates inaccuracies in favor of the consumer, and therefore harms no one.  579 F.3d at 708.  This comment does not distinguish *Beaudry*.  Plaintiffs allege that Defendants included a liability waiver in the very document intended to inform them of their rights under the FCRA.  Complaint

[ECF 3], ¶¶62-69.  These rights  are non-waivable.  *See* June 12, 1998 FTC Advisory Opinion to Hauxwell (opining that inclusion of liability waiver in FCRA disclosure form violates stand-alone disclosure requirement, and that as a general principle of law benefits provided by federal statute are non-waivable.)  Declaration of Mark S. Greenstone filed concurrently herewith ("Greenstone Decl."), Exh. 1.

Plaintiffs further allege that as a result of these actions, which obscured the clarity of Defendants' consumer report disclosure, Defendants failed to obtain proper authorization prior to procuring reports on Plaintiffs and class members.  Complaint [ECF 3], ¶¶ 70-75.  The fact that these harms may be difficult to measure does not mean they are comparable to a violation that has no negative attributes or is favorable to the consumer.  Like the plaintiff in *Beaudry*, who was impacted by the existence of an incorrect report with negative information even though it was never used or relied upon, Plaintiffs were impacted to the extent their privacy was invaded and they were misled as to their rights under the FCRA, even though they did not suffer a consequential damage as a result of Defendant's conduct.

The Circuits that have addressed the question agree with *Beaudry*: "the actual-injury requirement may be satisfied *solely* by the invasion of a legal right that Congress *created*.  This is not a novel principle within the law of standing."  *Hammer v. Sam's East, Inc.*, 754 F.3d 492, 499 (8th Cir. 2014) (finding that a plaintiff suing for statutory damages under the FCRA has Article III standing, even in the absence of a claim for actual damages) (emphasis in original); *Edwards v. First Amer. Fin. Corp.*, 610 F.3d 514, 517-18 (9th Cir. 2010) (homeowner who brought suit under Real Estate Settlement Procedures Act for violation of anti-kickback provisions had standing to sue regardless of whether she was overcharged); *Murray*, 434 F.3d at 952-53 (7th Cir. 2006)  (in reversing denial of class certification in FCRA case, holding that statutory damages are available

14

under FCRA "without proof of injury"); *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1042 (D.C. Cir. 2010) (recognizing that deprivation of statutory right under Columbia Consumer Protection Act may constitute injury-in-fact sufficient to confer standing); *Robey v. Shapiro, Marianas & Cejda, L.L.C.*, 434 F.3d 1208, 1211 (l0th Cir. 2006) (plaintiff had Article III standing to sue under FDCPA for improper attempt to collect a debt even though plaintiff never paid debt). Plaintiffs here likewise have Article III standing to proceed.

>        **C.**    **Discovery Should Not Be Stayed**

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "In ruling upon a motion to stay discovery, the Court is required to weigh the burden of proceeding with discovery upon the party from whom discovery is sought against the hardship which would be worked by a denial of discovery." *Charvat v. NMP, LLC*, Case No. 2:09-cv-209, 2009 U.S. Dist. LEXIS 96083, at *2 (S.D. Ohio Sept. 30, 2009). Stays are particularly disfavored when they are based upon events in other, unrelated proceedings. As the Supreme Court has explained, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N Am. Co.*, 299 U.S. 248, 255 (1936). The burden to show why a stay of discovery should be granted is on the party seeking the stay. *Tarazi v. Oshry*, Case No. 2:10-cv-793, 2011 U.S. Dist. LEXIS 39654, at *18 (S.D. Ohio Apr. 12, 2011). Defendant fails to meet this burden.

Unlike the plaintiff in *Spokeo*, the Plaintiffs who initially filed this case did not invoke the jurisdiction of a federal court. It was the Defendant who sought to invoke the jurisdiction of a federal court, when it filed a Notice of Removal to the Southern District of Ohio, alleging that this

Court has original federal question jurisdiction under 28 U.S.C. §1331.  [ECF 1.]  Defendant should be estopped from now questioning the very federal jurisdiction that it invoked.

Furthermore, pursuant to 28 U.S.C. § 1447, a case removed to federal court, such as the present case, *must* be remanded if subject matter jurisdiction is lacking: "If at any time before final judgement it appears that the district court lacks subject matter jurisdiction, *the case shall be remanded*."  28 U.S.C. § 1447(c) (emphasis supplied).  *See also Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) ("[T]he literal words of § 1447(c), . . . on their face, give no discretion to dismiss rather than remand an action.")

It is well-settled that standing, the issue raised in *Spokeo*, is an element of subject matter jurisdiction.  As a result, courts have consistently held that where standing is lacking in a case removed to federal court, it must be remanded.  *See, e.g.*, *Coyne ex rel. Ohio v. Am. Tobacco Co*., 183 F.3d 488, 496 (6th Cir. 1999); *Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1226 (10th Cir. N.M. 2012); *Giordano v. Wachovia Sec., LLC*, No. 06-476, 2006 WL 2177036, at *5 (D.N.J. July 31, 2006); *Greenberger v. S.F. Police Dep't*, No. C-01-2163, 2001 WL 969048, at *2 (N.D. Cal. Aug. 13, 2001); *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 540 (3d Cir. 1994); *Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dep't of Human Servs*., 876 F.2d 1051, 1053–54 (1st Cir. 1989).  Here, therefore, if it is ultimately held that Plaintiffs lack Article III standing based on *Spokeo*, this Court will be required to remand this matter to the Ohio Court of Claims.  The Ohio Court of Claims will not be bound by *Spokeo* and Plaintiffs will be permitted to proceed pursuant to the FCRA's jurisdictional provision which provides, in pertinent part:  "An action to enforce any liability created under this title may be brought in any appropriate Untied States district court, without regard to the amount in controversy, *or in any other court of competent jurisdiction*."  *See* 28 U.S.C. §1681p (emphasis added).  Allowing the parties to proceed with

discovery therefore serves the interests of efficiency and works no harm to Defendant which will be forced to defend itself in any event.

Defendant cites two cases in which such stays have been granted. Motion at 15-16. But the truth is that the vast majority of FCRA cases alleging similar statutory violations have not been stayed, and numerous courts have denied similar motions to stay. *See, e.g., Courtright v. O'Reilly Automotive Stores, Inc.*, No. 4:14-CV-00334 (W.D. Mo. Dec. 18, 2015) at ECF 83 [Greenstone Decl., Exh. 2]; *Speer v. Whole Food Mkt. Grp., Inc.*, No. 8:14-CV-3035-T-26, 2015 WL 2061665, at *1 (M.D. Fla. Apr. 29, 2015); *Dreher v. Experian Info. Solutions, Inc.*, No. 3:11-cv-624 (E.D. Va. April 20, 2015) at ECF 344 [Greenstone Decl., Exh. 3]; *Manuel v. Wells Fargo Bank, NA*, No. 3:14-cv-238 (E.D. Va. Aug 18, 2015) at ECF 92 [Greenstone Decl., Exh. 4]; *Jones v. Sterling Infosystems, Inc.*, No. 14-cv-03076 (S.D.N.Y. Oct. 6 2015) at ECF 51 [Greenstone Decl., Exh. 5]; *Doe v. Selection.com*, No. 15-cv-02338 (N.D. Cal. Oct. 8, 2015) at ECF 27 [Greenstone Decl., Exh. 6]; *Woods v. Caremark PHC, L.L.C.*, No. 4:15-CV-00535, 2015 WL 6742124, *3 (W.D. Mo. Nov. 2, 2015). Like the present case, *Courtright*, *Woods* and *Jones* all involved alleged stand-alone disclosure violations, and *Manuel* involved adverse action violations.

Nor does the fact that Defendant has moved to dismiss based on sovereign immunity support a discovery stay. Indeed, Courts in the Southern District of Ohio typically do not stay discovery simply because a motion to dismiss is pending. *See, e.g., Mielcarek v. Jackson*, No. 2:11-cv-00255, 2012 U.S. Dist. LEXIS 125159, at *2-*3 (S.D. Ohio Sept. 4, 2012) ("This Court ordinarily will not stay discovery because of a pending motion to dismiss."). Even if a dispositive motion is pending this is "usually deemed insufficient to support a stay of discovery." *Ohio Bell Tel. Co., Inc. v. Global NAPs Ohio, Inc.*, No. 2:06-cv-0549, 2008 U.S. Dist. LEXIS 21288, at *3-*4 (S.D. Ohio Mar. 4, 2008). Notably, the cases Defendant cites to support a stay involved claims that would have been

completely extinguished in the event Defendant prevailed on its sovereign immunity defense. Plaintiffs submit that because Defendant is subject to liability in the Court of Claims, the appropriate course of action in this case would be to remand in the event Defendant is deemed to be immune from suit in federal court. Because this matter will proceed regardless of the outcome of Defendant's motion, a stay should not issue.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that Defendant's Motion be denied in its entirety. Alternatively, if the Court is inclined to hold that Defendant is immune from suit in federal court, Plaintiffs respectfully request that this case be remanded to the Ohio Court of Claims.


Respectfully submitted,

Dated: January 15, 2016                **GLANCY PRONGAY & MURRAY LLP**


By:  *s/ Mark S. Greenstone*
Marc L. Godino
Mark S. Greenstone
Kara M. Wolke
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-201-9150
Facsimile: 310-201-9160
mgodino@glancylaw.com
mgreenstone@glancylaw.com
kwolke@glancylaw.com

**KOOPERMAN GILLESPIE MENTEL LTD.**
Katherine Connor Ferguson
100 S. 4th Street, Suite 100
Columbus, OH 43215
Telephone: (614) 344-4840
kferguson@kgmlaw.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Mark S. Greenstone, hereby certify that on January 15, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

<u>*s/ Mark S. Greenstone*</u>
Mark S. Greenstone

# Mailing Information for a Case 2:15-cv-03030-GCS-EPD Smith et al v. The Ohio State University

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Katherine Connor Ferguson**
  kferguson@kgmlaw.com

- **Marc L Godino**
  mgodino@glancylaw.com

- **Mark S Greenstone**
  mgreenstone@glancylaw.com

- **Catherine A. Jopling**
  cjopling@btlaw.com,hkittle@btlaw.com

- **Randall William Knutti**
  randall.knutti@ohioattorneygeneral.gov

- **Martha Brewer Motley**
  mcbrewer@vorys.com,dmchilelli@vorys.com

- **Lee Ann Rabe**
  LeeAnn.Rabe@ohioattorneygeneral.gov,jamie.childers@ohioattorneygeneral.gov

- **Robert Neal Webner**
  RNWebner@vssp.com

- **Kara M. Wolke**
  kwolke@glancylaw.com,info@glancylaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`