IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEANNA SMITH, et al., | : | Case No.: 2:15-cv-03030 |
| Plaintiffs, | : | Judge Smith |
| v. | : | Magistrate Judge Deavers |
| THE OHIO STATE UNIVERSITY, | : | |
| Defendant. | : | |

## DEFENDANT THE OHIO STATE UNIVERSITY'S
## REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

**I.      Introduction**

The threshold question in this case is whether an alleged violation of the Fair Credit Reporting Act ("FCRA") can create liability for Ohio State, an arm of the State. The answer to that question is an unequivocal "no," as evidenced by the unanimous case law Ohio State cited in its Motion. Tellingly, Plaintiffs' Opposition brief ignores this issue and those cases. Instead, Plaintiffs argue that (1) Ohio State waived its sovereign immunity entirely by removing this case to federal court, and (2) that the Ohio Court of Claims Act, R.C. 2743.01 *et seq.*, somehow permits Plaintiffs to assert claims against Ohio State, irrespective of whether Congress intended the FCRA to apply to States in the first place. Both of these arguments fail as a matter of law, under controlling precedent. Moreover, Plaintiffs' FCRA claim also fails because, as their Opposition concedes, they suffered no damages as a result of the alleged violation. As a result, they lack both standing and a cognizable injury under the statute. Finally, Plaintiffs fail to present any compelling argument as to why this lawsuit – where Ohio State asserts immunity and a potentially dispositive Supreme Court decision is imminent – should not be stayed. For the reasons stated in Ohio State's Motion and herein, this case should be stayed until it is dismissed.

## II. Law and Analysis

### A. Plaintiffs Cannot Assert an FCRA Claim Against Ohio State Because the Statute Does Not Apply to the States.

The threshold question for this Court to resolve is whether Ohio State, as an arm of the State, is subject to liability under the FCRA. As Ohio State explained in its Motion, and as Plaintiffs have now failed to refute, the answer to this question is "no." Congress did not waive the States' sovereign immunity in enacting the FCRA because in order to do so, Congress must **both** "act[] pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment" **and also** "make[] its intention to abrogate unmistakably clear in the language of the statute. . ." *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003) (citations omitted). It is clear that both prongs of this analysis must be satisfied. *See, e.g.*, *Campinha-Bacote v. Regents of the Univ. of Mich.*, No. 1:15-cv-330, 2016 U.S. Dist. LEXIS 5958, at *6 (S.D. Ohio Jan. 19, 2016) (holding that though Congress made its attempt to abrogate sovereign immunity clear in enacting the Copyright Remedy Clarification Act, 17 U.S.C. § 511(a), Congress's attempt at abrogation was invalid because the law was passed pursuant to authority conferred under Article I of the Constitution). In this case, Plaintiffs cannot meet *either* prong.

As described in Section III.A.1. of Ohio State's Motion, it is indisputable that Congress enacted the FCRA pursuant to its Commerce Clause powers, and where Congress relies only on its Article I Commerce power to enact a statute, that statute cannot function to abrogate the States' immunity. (ECF No. 7 at 7.) Plaintiffs' Opposition brief wholly failed to address this and Plaintiffs' silence should be seen as a tacit admission that Ohio State is correct.

Moreover, as Ohio State also explained in Section III.A.2. of its brief, in enacting the FCRA, Congress did not make an intention to waive the States' sovereign immunity "unmistakably clear," as courts require. (*Id.* at 8.) Absent this, the statute cannot be applied

against the States. *See, e.g.*, *Dellmuth v. Muth*, 491 U.S. 223, 225 (1989) (superseded by statute) (holding that the Education of the Handicapped Act, 20 U.S.C. § 1400 *et seq.*, did not abrogate the immunity of states because Congress did not make its intention unmistakably clear in the language of the statute, despite being passed under the authority of the Fourteenth Amendment.); *Potterf v. Ohio State Univ.*, No. 2:15-cv-703, 2016 U.S. Dist. LEXIS 6032, at *8 (S.D. Ohio Jan. 19, 2016) (Deavers, J.) (dismissing claims against Ohio State because, pursuant to well-settled authority, it is not a "person" under the False Claims Act, 31 U.S.C. §§ 3729); *Cowtown Found., Inc. v. Beshear*, No. 1:09-CV-56, 2010 U.S. Dist. LEXIS 86061, at *3 (W.D. Ky. Aug. 19, 2010) (holding that the phrase "person" as including "government or governmental subdivision or agency" in Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* was not an unequivocal expression of Congress's intent to abrogate state sovereign immunity); *Mercer v. Jaffe, Snider, Raitt & Heuer, P.C.*, 730 F. Supp. 74, 76 (W.D. Mich. 1990) (holding that the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), as amended, did not demonstrate "unmistakably clear intent" to override the Eleventh Amendment when "person" was defined to include "government, or political subdivision, agency, or instrumentality of a government").

It is black letter law that the first step in construing any federal statute is determining congressional intent. Here, the prevailing case law and standards make clear that Congress did ***not*** intend the FCRA to apply to States. Furthermore, Plaintiffs' Opposition brief does not even address, much less dispute, this crucial point. Accordingly, Plaintiffs' claim must be dismissed because Ohio State, as a state entity, is not within the scope of the statute.

### B. Ohio Has Not Waived Sovereign Immunity as Plaintiffs Allege.

Although it is irrefutable that Ohio State is not subject to the FCRA, as set forth above, Plaintiffs attempt to circumvent this conclusion by alleging that Ohio State waived its sovereign

immunity defenses.  First, Plaintiffs claim that Ohio State waived immunity by failing to assert the defense in its first filing, which is incorrect.  Second, Plaintiffs claim that by removing this case from state court and submitting to the jurisdiction of the federal court, Ohio State waived immunity – which is also incorrect because it improperly conflates two separate concepts of immunity.  Third and finally, Plaintiffs allege that the Ohio Court of Claims Act, R.C. 2743.01 *et seq*., constitutes a limitless, prospective waiver of immunity that enables plaintiffs to sue the State of Ohio on all federal causes of action, irrespective of Congress' intent in enacting the statute at issue.  That wrongheaded argument fails both as a matter of statutory construction of federal law, as discussed above, and as a matter of Ohio law.

### 1. *Ohio State Preserved its Sovereign Immunity Defense.*

As an initial matter, Plaintiffs incorrectly claim that Ohio State waived its sovereign immunity defense because it "did not raise any immunity defense at the outset of this litigation. Indeed, [Ohio State] knew the defense was not available because of the State's explicit waiver." (ECF No. 18 at 10.)  This is flat wrong.  In its Notice of Removal, Ohio State pleaded:

> This Notice of Removal is filed subject to and with full reservation of rights. No admission of fact, law, or liability is intended by this Notice of Removal; ***all defenses, motions, and pleas are expressly reserved***; and OSU specifically does not concede that Plaintiffs have pled any claim upon which relief can be granted.

(ECF No. 1 at 2, ¶ 5.)  Ohio State then specifically asserted its immunity in this initial motion. Therefore, any allegation that Ohio State failed to preserve its immunity defenses is groundless and should be dismissed out of hand.

### 2. *Ohio State Did Not Waive All Immunity By Removing This Lawsuit.*

Plaintiffs claim that by removing this litigation from the Ohio Court of Claims, pursuant to 28 U.S.C. § 1331 "arising under" jurisdiction (ECF No. 1 at ¶¶ 6–8), and by submitting to the *jurisdiction* of the federal court, Ohio State has waived its ability to assert a sovereign immunity

defense to the *substance* of the underlying federal claim.  However, Plaintiffs have improperly conflated two different theories of state sovereign immunity.

The first type of sovereign immunity is jurisdictional and relates to the "immunity of a state's treasury from claims for damages brought by private entities in federal courts." *Beaulieu v. Vermont*, 807 F.3d 478, 483 (2d Cir. 2015) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)).  This immunity protects a state's fiscal integrity from federal court judgments and acts as a limitation on the federal judiciary's Article III powers.  *Id.* (citations omitted)

The second type of immunity is "a broader sovereign immunity, which applies against *all* private suits, whether in state or federal court." *Beaulieu* at *7–8 (citation omitted).  *See also Alden v. Maine*, 527 U.S. 706, 713 (1999) (noting that states' "immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution"); *Stewart v. North Carolina*, 393 F.3d 484, 488 (4th Cir. 2005)  (citing *Alden* and explaining the two varieties of immunity).

Accordingly, there are two types of "sovereign immunity" at issue:  (1) immunity from suit in federal court; and (2) the States' broader general sovereign immunity against all suits.  It is undisputed that "[a] state waives its immunity from a federal forum when it removes a case, which voluntarily invokes the jurisdiction of that federal forum." *Stroud v. McIntosh*, 722 F.3d 1294, 1302 (11th Cir. 2013).  Nevertheless, "a state does not waive any defense it would have enjoyed in state court – including immunity from liability for particular claims." *Ross v. Univ. of Fla. Bd. of Trs.*, No. 1:15-cv-16-RS-GRJ, 2015 U.S. Dist. LEXIS 28575, at *2 (N.D. Fla. Mar. 9, 2015) (citing *Stroud*, internal citation omitted).  By removing this lawsuit and submitting to the jurisdiction of this Court, Ohio State obviously consented to litigating this case in federal court.  However, Ohio State did not waive its substantive immunity to suit.

As the court in *Beaulieu* (a case that Plaintiffs themselves cited) explained,

> A state defendant sued in state court, when entitled to remove the suit to federal court, may well wish to do so in the belief that its entitlement to have the suit dismissed by reason of the state's sovereign immunity, an entitlement largely elaborated by federal courts, will be better protected by the federal courts than by courts of the state. . . .

*Beaulieu* at *14. However, submitting to the jurisdiction of this Court did not waive Ohio State's defenses to the underlying FCRA claims. As the *Beaulieu* Court further explained,

> [A] state agency sued on a federal law claim, which contends that the state's sovereign immunity remains intact but wishes to have the federal law claim adjudicated in federal court in the event of a finding that the state's immunity has been waived or abrogated, should not be compelled to abandon its claim of immunity as the price of access to a federal court. . . . ***Accordingly neither logic nor fairness supports the proposition that a state defendant's removal of a suit to the federal court should be construed as a waiver of the state's general immunity from suit***. And precedent does not support treating a state's removal as such a waiver.

*Id.* at *15–16. (emphasis added). This makes logical sense because,

> a state with a colorable immunity defense to a federal claim brought against it in its own courts would face a Morton's Fork: remove the federal claim to federal court and waive immunity or litigate the federal claim in state court regardless of its federal nature. Either way, the state would be compelled to relinquish a right: either its right to assert immunity from suit or its right to a federal forum.

*Bergemann v. R.I. Dep't of Envtl. Mgmt.*, 665 F.3d 336, 342 (1st Cir. 2011) (citations omitted).

Indeed, Plaintiffs have not cited a single case that stands for the proposition that removal of a lawsuit and consent to the jurisdiction of the federal court also waives all immunity defenses as related to the substance and merits of the underlying claim. Every case Plaintiffs cite relates to the first type of sovereign immunity – immunity from the jurisdiction of the federal courts – not to the substantive immunity Ohio State invokes in this Motion.

Plaintiffs further claim that Ohio State is seeking an "unfair tactical advantage" through the federal forum and cite *Lapides v. Bd. of Regents of the Univ. Sys. of Georgia*, 535 U.S. 613,

(2002). However, *Lapides* is readily distinguishable. In *Lapides*, plaintiff sued the Georgia University System in state court, alleging that the defendants violated both state and federal law. *Id*. at 616. The Georgia state legislature, through statute, had waived immunity for claims brought in state court. *Id*. The university removed the case to federal court and then sought dismissal based on immunity – it argued that, although it could be sued in state court, it enjoyed immunity in federal court. *Id*. at 616–17. The Supreme Court held that because the university would have been subject to suit in state court, it could not simply remove the case to federal court and have the action dismissed. The Court found that to hold otherwise would defeat one of the purposes of immunity, "to avoid inconsistency, anomaly, and unfairness, and not . . . selective use of 'immunity' to achieve litigation advantages." *Id*. at 620.

*Lapides* is readily distinguishable from this case. In *Lapides*, the state was using immunity to achieve a litigation advantage: knowing it did **not** enjoy immunity in state court, Georgia removed the action to federal court to assert immunity it would otherwise not have. In contrast, Ohio State, as a state entity, is not subject to the FCRA irrespective of the forum because Congress lacked both the authority and intent to bring the States within the scope of the law. (*See* ECF No. 7 at 7–8; Section II.A., *supra*.) Thus, Ohio State seeks no similar litigative advantage in removing the action to federal court. Regardless of the forum, the outcome should be the same: Congress did not create a valid cause of action against the States and therefore Plaintiffs cannot bring an FCRA claim against Ohio State.

Likewise, despite Plaintiffs' attempts to distinguish *Agrawal v. Montemagno*, 574 F. App'x. 570 (6th Cir. 2014) (ECF No. 18 at 10–12), it is controlling on this issue. *Agrawal* stands for the proposition that by removing claims to federal court, a State defendant consents to the *jurisdiction* of the federal court but does not waive its immunity defenses to the *substance* of the

underlying claim. In *Agrawal*, the University of Cincinnati ("UC") was sued in Hamilton County Court of Common Pleas on state and federal claims and removed the lawsuit to federal court. *Agrawal*, 574 F.. App'x. at 572. In federal court, UC asserted the same immunity defenses it could have asserted in common pleas court and the claims against it were dismissed. *Id.* at 573. On review, the Sixth Circuit held that UC did not waive its immunity through its removal and stated that *Lapides* is limited to state law claims for which the state has waived or abrogated its immunity from damages claims in the state trial courts.[1] The result in this case should be the same: because the FCRA does not apply to States, the appropriate resolution of the lawsuit is dismissal, and Ohio State could assert that defense irrespective of whether the case is heard in the Court of Claims or federal court. *See also Dantz v. Am. Apple Group, LLC*, 123 F. App'x. 702, 706–07 (6th Cir. 2005) (holding that *Lapides* did not apply because the potentially unfair litigation tactics the Court was concerned with in *Lapides* were not present); *Li v. Jiang*, 38 F. Supp. 3d 870, 877–878 (N.D. Ohio 2014) (holding that *Lapides* did not apply when defendant Youngstown State University removed state and federal claims from Mahoning County Court of Common Pleas to federal court and asserted the same immunity defenses in federal court that it could have asserted in state court); *Cmty. Mental Health Svcs. of Belmont, Harrison and Monroe Counties v. Mental Health and Recovery Bd. of Belmont, Harrison and Monroe Counties*, 395 F. Supp. 2d 644, 652 n.1 (S.D. Ohio 2004) (finding that the *Lapides* Court held that removal waived the immunity argument only "where the state legislature explicitly waives immunity to a state claim in state court"); *Stewart v. North Carolina*, 393 F.3d 484, 489 n.2 (4th Cir. 2005) (collecting cases noting the limited scope of *Lapides*); *Minix v. Pazera*, No.

---

[1] Plaintiffs claim that *Lapides* is not limited to state law claims (ECF No. 18 at 10-11), which is incorrect based on *Agrawal*. However, even if this Court were to hold that *Lapides* applies to federal law claims, too, the analysis is unchanged.

3:06-cv-398, 2010 U.S. Dist. LEXIS 81637, at *5 (N.D. Ind. Aug. 9, 2010) (noting the limited scope of *Lapides*).[2]

### C. The Ohio Court of Claims Act Cannot Create Substantive Rights Under Federal Law That Do Not Otherwise Exist.

Rather than address any of the many cases Ohio State cited for the proposition that the FCRA does not apply to the States, Plaintiffs instead attempt to find a backdoor into the FCRA by arguing that Ohio State has "opted-in" to **all** federal statutes – regardless of statutory construction – through Ohio's enactment of the Ohio Court of Claims Act. However, that argument withers under scrutiny, because the Ohio Court of Claims Act cannot, and does not, create a substantive right that does not otherwise exist.

The Court of Claims Act, R.C. 2743.01 *et seq.*, allows the state to be sued in some instances but it is not the source of substantive rights. The Court of Claims Act states, in pertinent part:

> The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims created in this chapter ***in accordance with the same rules of law applicable to suits between private parties*** * * *.

R.C. 2743.02(A)(1) (emphasis added). Therefore, the Court of Claims Act does not create new rights or causes of action but, rather, only permits a remedy. *See Schenkolewski* v. *Metroparks Sys.*, 67 Ohio St. 2d 31, 426 N.E.2d 784 (1981). Indeed, "the language of R.C. 2743.02(A)(1) itself negates the creation of a new right." *Reese v. Ohio State Univ. Hosps.*, 6 Ohio St.3d 162, 164, 451 N.E.2d 1196 (1983). *See also McCord* v. *Division of Parks and Recreation*, 54 Ohio

---

[2] Nor is this case like *Ku v. Tennessee*, 322 F.3d 431 (6th Cir. 2003), which Plaintiffs also cited. (ECF No. 18 at 9.) Unlike this litigation, where Ohio State specifically reserved its defenses upon removal and then immediately moved to dismiss on immunity grounds (*see* Section II.B.1., *supra*), in *Ku*, the State of Tennessee was deemed to have waived immunity when it raised its immunity defense only after engaging in substantial discovery, filing a motion for summary judgment, and receiving an adverse ruling. *Ku*, 322 F.3d at 432.

St. 2d 72, 74, 375 N.E.2d 50 (1978) ("R.C. 2743.02(A) does not create a new right of action against the state"); *Phillips v. Ohio Dep't of Nat. Res.*, 26 Ohio App. 3d 77, 498 N.E.2d 230 (10th Dist. 1985), paragraph 4 of the syllabus ("The Court of Claims Act does not stand for the proposition that one who is injured by what is shown to be actual conduct or a failure to act by the state should be able in all cases to make a claim against the state."); *Tod v. Cincinnati State Technical and Cmty. College*, 2009-Ohio-3700, 2009 Ohio Misc. LEXIS 111, at ¶ 52 (analyzing federal statute and holding, "a cause of action only exists if separately provided for under state law") (citations omitted). In order for the Court of Claims Act to waive immunity to a claim, there must first be a valid claim. In this case, there is not, *see* Section II.A, *supra*, and therefore Plaintiffs' FCRA claim fails.

In support of their assertion that the Court of Claims Act waives "immunity from all suits *of whatever nature*" (ECF No. 18 at 4–5) (emphasis in original), Plaintiffs cite *Manning v. Ohio State Library Bd.*, 62 Ohio St. 3d 24, 28–31, 577 N.E.2d 650 (1991). However, *Manning* involved a suit brought under Title VII of the Civil Rights Act of 1964. *Id.* In contrast to the FCRA, Congress both made its intention to abrogate "unmistakably clear" ***and*** enacted the Civil Rights Act under authority of the Fourteenth Amendment, not the Commerce Clause, and was therefore able to abrogate state sovereign immunity through that statute. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 447–48 & 459 n.9 (1976). *Manning* thus has no application here.

Plaintiffs likewise misconstrue *Leaman v. Ohio Dept. of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 951–55 (6th Cir. 1987) and claim that "*Leaman* definitively established that the State of Ohio waived its immunity from both federal and state law actions against it by virtue of the Court of Claims Act." (ECF No. 18 at 5.) However, the waiver discussed in *Leaman* addresses a ***plaintiff's*** waiver of the ability to simultaneously pursue claims

against both the State and the State's employees. In *Leaman*, the plaintiff was a State employee who brought suit in federal court under 42 U.S.C. § 1983 against a State agency and several officials, alleging that her constitutional rights were violated when she was fired. *Leaman*, 825 F.2d at 948. Plaintiff subsequently filed a complaint against the State in the Court of Claims, based on the same facts as alleged in her federal suit. *Id.* The district court dismissed plaintiff's §1983 action against the individual defendants on the grounds that, under the Court of Claims Act, plaintiff waived all causes of action against the individual defendants by filing suit against the State in the Court of Claims. The Sixth Circuit affirmed the dismissal. An *en banc* majority held that the Court of Claims Act unambiguously waived a *plaintiff's* ability to bring any cause of action, including federal claims, against individual State employees when the plaintiff elects to sue the State in the Court of Claims. *Id.* at 951–52.

Thus, *Leaman* does not, as Plaintiffs claim, stand for the proposition that the Court of Claims Act created an unrestricted, prospective waiver by the State of Ohio to liability under all state and federal claims, irrespective of Congress' intent or authority. Rather, *Leaman* stands for the proposition that the Court of Claims Act created a *quid pro quo*: once a plaintiff elects to go after the sovereign state's "deep pockets" in the Court of Claims, the plaintiff waives not only state causes of action against state employees, but federal claims as well. *Turker v. Ohio Dep't of Rehab. & Corrs.*, 157 F.3d 453, 457 (6th Cir.1998). Because Plaintiffs have not sued any individual state employees, this analysis is inapplicable to this case.

### D. Plaintiffs Lack Article III Standing Because They Have Not Alleged An Injury-in-Fact.

Plaintiffs lack Article III standing because they have not alleged a cognizable injury-in-fact. Plaintiffs have now expressly admitted that they "***did not suffer a consequential damage as a result of Defendant's conduct***." (ECF No. 18 at 15.) (emphasis supplied). As Ohio State

set forth in its Motion (ECF No. 7 at 10–12), Plaintiffs' allegation that Ohio State committed a technical breach of the FCRA by presenting both a disclosure and a release in a single document does not establish the necessary "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

Plaintiffs attempt to resuscitate their admitted lack of injury by misstating the holding of *Beaudry v. TeleCheck Servs.*, 579 F.3d 702 (6th Cir. 2009). Contrary to what Plaintiffs claim, *Beaudry* expressly does not reach the issue of standing for alleged FCRA violations where no consequential damages have been alleged or suffered, as in this case. The *Beaudry* court expressly stated,

> To the extent the defendants worry about violations of the statute that hurt no one – say a willful violation of the "reasonable procedures" requirement that creates no inaccuracies in the data used to generate reports or, better yet, creates inaccuracies that *favor* the consumer – ***that interesting problem is not presented here. Beaudry alleges that the defendants' systems include*** **false** ***and*** **negative** ***information about her.***

*Beaudry*, 579 F.3d at 708 (emphasis supplied). Plaintiffs, as they have admitted, make no similar allegations that "false and negative" information was presented through their background checks.

Moreover, Plaintiffs have wholly ignored Ohio State's argument that interpreting the FCRA to confer standing disrupts the balance of powers between Congress and the judiciary (*see* ECF No. 7 at 13). As Ohio State explained, if Congress intends to disrupt the established constitutional balance through legislation (for example, by allowing no-harm, technical statutory violation to substitute for the Article III injury-in-fact requirement), Congress must clearly state that intention in the statutory text. *See, e.g., Kukana v. Holder*, 558 U.S. 233, 237 (2010) ("Separation-of-powers concerns, moreover, caution us against reading legislation, absent clear

statement, to place in execute hands authority to remove causes from the Judiciary's domain.") The FCRA contains no such statement.

**E. This Court Should Stay Discovery in This Litigation Pending Resolution of the Motion to Dismiss and/or the Supreme Court's Decision in *Spokeo*.**

As Ohio State explained in its Motion, discovery in this litigation should be stayed for two independently sufficient reasons: (1) Ohio State asserted a sovereign immunity defense which presents the extraordinary basis under which this Court should grant a stay; and (2) the decision in *Spokeo v. Robbins*, which will be determinative of the standing issue, is anticipated imminently (and, in any case, a decision will be rendered no later than June 2016).

*1. Ohio State is Entitled to Adjudication of its Sovereign Immunity Defense Before it Should Be Required to Engage in Costly Discovery.*

As Ohio State previously stated, and which Plaintiffs failed to refute, a stay is warranted when a motion raises "immunity from suit, which would be substantially vitiated absent a stay." *Williamson v. Recovery Ltd. P'ship*, No. 2:06-CV-0292, 2010 U.S. Dist. LEXIS 19873, at *8 (S.D. Ohio Feb. 10, 2010). Ignoring this line of authority, Plaintiffs cite only to cases where garden-variety motions to dismiss have been asserted. (ECF No. 18 at 17.) But this is not a garden-variety motion. Indeed, if the Court denies a stay, Ohio State, "will in fact be injured by allowing discovery to continue, because the sovereign immunity at issue in this case is an immunity from legal action and proceedings altogether. ***Forcing Defendants to participate in court-ordered discovery will deprive Defendants of this immunity***." *DRFP L.L.C. v. Republica Bolivariana De Venez.*, No. 2:04-cv-793, 2009 U.S. Dist. LEXIS 105094, at *22–23 (S.D. Ohio Nov. 9, 2009) (emphasis added). A stay is particularly apt given that Plaintiffs do not contest the

threshold issue that Congress neither had the authority nor the intent to apply the FCRA to State entities and therefore Ohio State is not subject to Plaintiffs' claims.[3]

Moreover, Plaintiffs acknowledge that discovery would be onerous because "Defendant is the State of Ohio's largest employer, with tens of thousands of current and former employees." (ECF No. 18 at 3.) Given that Plaintiffs purport to represent a nationwide class of "All employees or prospective employees of the Defendant in the United States, with respect to whom Defendant procured or caused a consumer report to be procured, during the period five years prior to the filing of the Complaint in this action through the date of certification" (ECF No. 3 at 7, ¶ 38), this Court should address and decide Ohio State's sovereign immunity defense before requiring Ohio State to endure discovery. Indeed, the equities weigh even more heavily towards a stay in this case, as the anticipated discovery would seek to reveal confidential personal information of third-parties (*i.e.*, unsuccessful applicants, hired employees, or initially hired employees who have since left Ohio State's employment). In order to preserve the privacy of these putative class members until it is determined whether Plaintiffs have actually stated a claim, the Court should stay discovery.

        2.      *Staying the Litigation Pending* Spokeo *Will Benefit the Parties and the Court.*

It is indisputable that the Supreme Court's decision on FCRA standing in *Spokeo* will directly impact the FCRA standing argument raised by Ohio State. It will thus conserve judicial resources, as well as the resources of the parties, if the Court stays this case while *Spokeo* is

---

[3] Plaintiffs also claim, "because Defendant is subject to liability in the Court of Claims, the appropriate course of action in this case would be to remand in the event Defendant is deemed to be immune from suit in federal court." (ECF No. 18 at 18.) But, again, and as described in Section II.B., *supra*, Ohio State is not claiming to be immune from suit in federal court, it is immune from the FCRA entirely, which Plaintiffs failed to refute. If this Court follows the universal precedent holding that the FCRA does not apply to the States, it is dispositive of the case and dismissal is the appropriate result.

pending. Moreover, the stay will likely last no more than four months, one way or another, because the Supreme Court's ruling will be issued by June 2016 (though a decision is anticipated imminently as the case was argued in early November 2015).

While Plaintiffs cited cases from outside the Sixth Circuit declining to issue stays in other FCRA cases (several of which were decided without analysis and are of no assistance to the present inquiry), the ***only*** Sixth Circuit cases to consider a stay pending *Spokeo* granted the relief requested. *See Compressor Eng'g Corp. v. Thomas*, No. 10-10059, 2016 U.S. Dist. LEXIS 13174, at *16 (E.D. Mich. Feb. 3, 2016) (staying proceedings pending resolution of *Spokeo* and noting that a decision is anticipated by the end of the court's current term); *Schartel v. OneSource Tech., LLC*, No. 1:15 CV 1434, 2015 U.S. Dist. LEXIS 155967, at *4–5 (N.D. Ohio Nov. 17, 2015) (Gaughan, J.) (staying proceedings pending resolution of *Spokeo*); *Hillson v. Kelly Servs.*, 2:15-CV-10803, 2015 U.S. Dist. LEXIS 97958 (E.D. Mich. July 15, 2015) (Patti, J.) ("The Court finds that a stay is warranted, *inter alia*, because *Spokeo* has the high potential to be completely dispositive of the instant case and because judicial economy favors a limited delay in awaiting the *Spokeo* decision").

Moreover, it is hyperbole for Plaintiffs to suggest that the "vast majority" of FCRA cases have not been stayed; many cases, if not the majority of cases, across the country *have* been stayed pending resolution of *Spokeo* in both FCRA cases but as to other statutes, too. *Luster v. Jewelers*, No. 1:15-cv-2854-WSD, 2015 U.S. Dist. LEXIS 169115, at *6 n.2 (N.D. Ga. Dec. 17, 2015) (collecting cases and stating, "Other courts have recently addressed this issue, and ***the***

***majority have found a stay to be warranted*** pending the resolution of … *Spokeo*.") (emphasis supplied).[4]

Finally, Plaintiffs claim that discovery will be required regardless because, if *Spokeo* is resolved favorably to Ohio State, the case must be remanded. Plaintiffs state, "[t]he Ohio Court of Claims will not be bound by *Spokeo* and Plaintiffs will be permitted to proceed pursuant to the FCRA's jurisdictional provision." (ECF No. 17.) Even if the Court were to remand the case, it is well-settled that, "Ohio courts have long adopted, voluntarily, federal standing requirements." *Brinkman v. Miami Univ.*, 12th Dist. Butler No. CA2006-12-313, 2007-Ohio-4372, at ¶ 43, n. 5 (internal citations omitted); *see also State v. Davis*, 2d Dist. Miami No. 97-CA-17, 1997 Ohio App. LEXIS 5966 (Dec. 31, 1997) (observing that the Ohio Supreme Court generally follows federal decisions on standing). Thus, if this case is remanded, it is highly unlikely that the Ohio Court of Claims would decline to follow the interpretation of the highest court in the United States on litigant standing under the purely federal statute at issue.

## III. Conclusion

For all of the reasons stated in Ohio State's Motion to Dismiss and herein, all of Plaintiffs' claims against Ohio State should be dismissed. Moreover, this Court should stay discovery in this action pending resolution of this Motion because of the sovereign immunity

---

[4] *See also Scheffler v. Equifax Info. Servs.,* No. 15-3340, 2016 U.S. Dist. LEXIS 13420, at *11 (D. Minn. Feb. 3, 2016); *Rodriguez v. DFS Servs., LLC*, No. 8:15-cv-2601-T-30TBM, 2016 U.S. Dist. LEXIS 11494, at *5-6 (M.D. Fla. Feb. 1, 2016); *Ernst v. Dish Network, LLC*, 2016 U.S. Dist. LEXIS 10724, at *5-6 (S.D.N.Y. Jan. 28, 2016); *Hannahan Endodontic Grp., P.C. v. Inter-Med, Inc.*, No. 15-C-1038, 2016 U.S. Dist. LEXIS 7162, at *1 (E.D. Wis. Jan. 20, 2016); *Tel. Sci. Corp. v. Asset Recovery Solutions, LLC*, No. 15 C 5182, 2016 U.S. Dist. LEXIS 581, at *14 (N.D. Ill. Jan. 5, 2016); *Tel. Sci. Corp. v. Hilton Grand Vacations Co., LLC*, No. 6:15-cv-969-Orl-41DAB, 2015 U.S. Dist. LEXIS 159479, at *6 (M.D. Fla. Nov. 20, 2015); *Lopez v. Miami-Dade County*, No. 15-Civ-22943, 2015 U.S. Dist. LEXIS 155987, at *4 (S.D. Fla. Nov. 6, 2015); *Salvatore v. MicroBilt Corp.*, No. 4:14-CV-1848, 2015 U.S. Dist. LEXIS 110025, at *5 (M.D. Pa. Aug. 20, 2015); *Stone v. Sterling Infosystems, Inc.*, No. 2:15-CV-00711-MCE, 2015 U.S. Dist. LEXIS 99161, at *1 (E.D. Cal. July 29, 2015); *Larson v. Trans Union, LLC*, No. 12-CV-05726-WHO, 2015 U.S. Dist. LEXIS 83459, at *1 (N.D. Cal. June 26, 2015).

defenses Ohio State has asserted. Alternatively, if the Court deems the standing question determinative of whether the case may proceed, this Court should stay this action pending resolution of *Robins v. Spokeo*.

                                                                  Respectfully submitted,

                                                                  MICHAEL DEWINE (0009181)
Ohio Attorney General

*/s/ Martha Brewer Motley*
Robert N. Webner (0029984) (Trial Attorney)
Martha Brewer Motley (0083788)
VORYS, SATER, SEYMOUR and PEASE LLP
52 E. Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
T: (614) 464-5626 / F: (614) 719-5080
rnwebner@vorys.com
mbmotley@vorys.com

*Special Counsel for Defendant
The Ohio State University*

Of Counsel:
Lee Ann Rabe (0077170)
Randall W. Knutti (0022388)
Principal Assistant Attorneys General
Court of Claims Defense Section
150 East Gay Street, Floor 18
Columbus, Ohio 43215
T: (614)466-7447 / F: (614)644-9185
LeeAnn.Rabe@OhioAttorneyGeneral.gov
Randall.Knutti@OhioAttorneyGeneral.gov

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 5, 2016, a true and correct copy of the foregoing has been served via the Court's ECF system on all counsel of record.

                                                                  */s/ Martha Brewer Motley*
Martha Brewer Motley